IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LEON DOUGLAS HUMPRHIES, | Case No. 13-58138-CRM |
| Debtor. | Judge Mullins |

DEBTOR'S PLAN OF REORGANIZATION

    COMES NOW LEON DOUGLAS HUMPHRIES (the "Debtor"), through his undersigned counsel, and submits the following Plan of Reorganization:

ARTICLE I
SUMMARY

    This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to satisfy the claims of creditors of Debtor from: (i) the earnings of the debtor and (ii) the sale of assets owned by the Debtor.

    This Plan provides for one class of tax claims, one class of secured claims; and one class of unsecured claims. The unsecured creditors holding allowed claims will receive distributions funded by a sale of some of the Debtor's assets and the Debtor's future income. This Plan also provides for the payment of administrative and priority claims in full.

    All creditors and equity security holders should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders will be circulated with this Plan when votes are solicited. Your rights may be affected by this Plan. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

Claims and interests in this Plan are classified as follows:

2.1    <u>Class 1</u>. Class 1 consists of the claim of Community & Southern Bank to the extent secured by real or personal property of the Debtor.

2.2    <u>Class U</u>. Class U consists of all unsecured claims.

ARTICLE III
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.1     Unclassified Claims. Pursuant to 11 U.S.C. § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.2     Administrative Expense Claims. The claims of all post-petition, pre-confirmation (administrative expense) creditors that arise in the ordinary course of the Debtor's business affairs will be paid within 45 days of when due and are not classified under the Plan. Any and all administrative-expense claims allowed and entitled to priority under 11 U.S.C.A. §§ 503 and 507(a)(1), will be paid in full on the Effective Date except to the extent that any holder of such a claim agrees to some other treatment. The Debtor retains the right to object to any administrative expense claim.

3.3     Priority Tax Claims. The Debtor shall pay any and all holders of a priority tax claim in accordance with the terms of 11 U.S.C. § 1129(a)(9)(C). Specifically, the Debtor shall pay any and all holders of tax claims under Section 507(a)(8) of the Bankruptcy Code in monthly installments, with three percent (3%) interest per annum, beginning on the 15th day of the first full month immediately following the Effective Date and equal monthly payments on the 15th of each month thereafter calculated to provide for payment in full ending on the 15th day of the month that is fifty-nine (59) months following the date of the order for relief in this case, at an equal rate over the term of the payments, and in the allowed amounts of such claims as of the Effective Date of the Plan. However, in the event that the most favored non-priority unsecured claim provided for by this Plan would be paid ahead of any holders of tax claims under Section 507(a)(8) of the Bankruptcy Code, then the payments to holders of tax claims under Section 507(a)(8) of the Bankruptcy Code shall be accelerated to match the treatment of most favored non-priority unsecured claim provided for by this Plan. The Debtor is entitled, but not required, to pay off priority tax claims faster than provided for in this section of the Plan if funds are available.

3.4     United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

ARTICLE IV
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1     Claims and interests shall be treated as follows under this Plan:

(1) At the time of the filing of this Plan, the Class 1 Claim is filed as a fully secured claim. Debtor proposes to surrender to the Class 1 Claimant all property securing

the debt as filed in full satisfaction of the claim. If the Class 1 Claimant amends its claim Debtor reserves the right to amend treatment of the Class 1 Creditor. The Class 1 Claimant is not impaired by this Plan

(2) The Class U claims consists of all remaining claims against the Debtor, excepting tax claims, other administrative expense claims, and the Claim of the Class 1 Claimant. Debtor will pay Class U a lump sum payment generated by liquidation of his interests in Porter Prescot and Metro Materials (less the costs of liquidation). He will pay an additional amount of $1,000 per month for ten years, with the first payment being made on the 15th day of the first full month following the Effective Date and each additional payment being made on the 15th of each month thereafter for a total of 120 payments.

4.2     Payment of unscheduled administrative expenses. Administrative expense claims are not classed under this Plan and are dealt with as provided for in Article III of the Plan.

4.3     Pro-rata Distribution. With respect to any distribution to a class under this Plan as of any particular distribution date, each claimant within the class shall receive a pro rata share of the distribution, which shall mean that the ratio of the cumulative amount of all funds distributed to the amount of each allowed claim shall be the same as the ratio of the cumulative amount distributed to a such a class to the total amount of all allowed claims in a particular class.

4.4     Unclaimed Distributions. "Unclaimed distributions" shall mean (a) any funds returned as undeliverable without a proper forwarding address and (b) checks not presented and paid within ninety (90) days of their distribution by the Debtor to claimants. Unclaimed distributions shall be held by the Debtor for a period of One Hundred and Eighty (180) days after a distribution is made, after which time the unclaimed distribution shall be deemed as unclaimed by the intended recipient and may be distributed to other claimants within the same class pro rata at that time or as part of the next regularly scheduled distribution.

4.5     Rounding. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

4.6     Method of Cash Distribution. Any cash payment to be made pursuant to the Plan may be made by check. Any payment due on a Holiday shall be made, without interest, on the next following day that is not a Holiday.

4.7     Prepayment. Provided that it is not in default of its obligations under this Plan, the Debtor may prepay, without penalty, all or any portion of any allowed claim, at any time, but shall not have any obligation to do so.

ARTICLE V
ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, the Debtor has scheduled such claim as disputed, contingent, or unliquidated, and the no party has filed an objection; or (iii) an adversary proceeding has been filed to avoid or disallow a claim; or (iv) the claim is referenced as disputed herein.

5.2     Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order, after which distributions will start on the next date scheduled by this Plan on which allowed claims are to receive a distribution and not immediately upon entry of a final non-appealable order allowing such claim. The Debtor may reserve an amount in its discretion from distributions as a contingency fund to put toward the satisfaction of disputed claims in the event they are allowed.

5.3     Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.4     Deadline for Amendment of Claims. All parties wishing to amend a claim must do so on or before the entry of an Order confirming the Plan.

ARTICLE VI
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     Assumed Executory Contracts and Unexpired Leases.

        (a)     The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

None.

        (b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty (20) days after the date of the order confirming this Plan or it shall be barred forever; provided, however, that the Landlord need not file a Proof of Claim for the amounts listed above in this Article. A claim for damages resulting from rejection of executory contracts shall be treated as a claim of a non-priority unsecured creditor.

ARTICLE VII
MEANS FOR IMPLEMENTATION OF THE PLAN

The plan will be implemented as follows:

7.1     Logistics of payments. The logistics of payments and other forms of satisfaction of claims are set forth above.

7.2     Source of Payments to Creditors. The Debtor is a businessman. The funds necessary to fund the plan will come from the sale of assets of the bankruptcy estate and the Debtor's continuing income.

ARTICLE VIII
GENERAL PROVISIONS

8.1     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions contained in this Article.

8.2     Effective Date of Plan. The Effective Date of this Plan is the day following the day on which an order confirming the Plan becomes a Final Non-appealable Order (as defined in 8.7 below).

8.3     Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.4     Binding Effect. On the date on which the Court enters an Order confirming the Plan, the provisions of the Plan shall be binding on the reorganized Debtor, the estate, all creditors, all holders of claims and interests, and all other parties in interest, whether or not such entities are impaired and whether or not such entities have accepted the Plan. The rights and obligations of any person or entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns or heirs of such person or entity.

8.5     Headings / Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.6     Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Georgia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as may be otherwise expressly provided in specific provisions of this Plan.

8.7     Final Order. An Order shall become a "Final Non-appealable Order" when it has

not been reversed, stayed, modified or amended; when the time to appeal or seek *certiorari,* review, vacation, or rehearing has expired or been effectively waived; and when such Order has become conclusive on all matters adjudicated thereby and is in full force and effect.

8.8   No Transfer Tax. As provided in 11 U.S.C. § 1146(c), no transfer or recordation tax or stamp tax or similar tax shall be imposed with respect to the transfer (including sale) of any real estate contemplated under this Plan once confirmed or any other property on which a transfer tax may be imposed which may be exempted by 11 U.S.C. § 1146(c).

8.9   Cram-down. Debtor will, if necessary, rely upon the "cram-down" provisions of 11 U.S.C. § 1129(b) for the purpose of obtaining confirmation of the Plan, and requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code in the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8).

8.10   Retained rights. Debtor retains all rights to seek turnover of estate property, avoidance of fraudulent or preferential transfers, to avoid post-petition transfers, and/or to assert its strong-arm powers, including all rights under 11 U.S.C. §§ 542, 544, 547, 548 and 549, regardless of whether demand has been made or an adversary proceeding or other action has been filed prior to or after confirmation of this Plan, and all such rights to pursue causes of action are vested in the Debtor by this Plan. Debtor retains all rights to object to Proofs of Claim, previously scheduled claims and informal claims.

8.11   Compensation for Services. Debtor has agreed to pay, subject to this court's review and approval upon application with respect to payments made from funds of Debtor's bankruptcy estate, for the professional services of: (A) accountants; (B) appraisers; (C) legal counsel; and (D) agents and brokers if Court approval of agents and brokers' commissions is deemed outside the ordinary course of business. The Debtor may continue to employ, without further Order of the Court, those professionals whose employment was approved prior to confirmation of this Plan. Notwithstanding any provision of this Plan, such payments are expressly authorized upon application and Order of the Court.

8.12   Retention of Jurisdiction; Modification. The Court shall retain jurisdiction (notwithstanding anything contained elsewhere herein) after confirmation of the Plan: (a) to consider (and reconsider if appropriate) claims and objections thereto; (b) to hear and determine any adversary proceeding pending on the Effective Date or arising after the Effective Date; (c) to hear and approve settlements of adversary proceedings; (d) to hear and determine claims for payment of attorney's fees, other professional fees, and expenses; (e) to fix any other expenses of administration and compensation; (f) to enforce the Plan or any Order previously entered in the above-captioned case; (g) to hear and determine any dispute arising under or relating to the Plan or arising under or relating to this Chapter 11 reorganization case, including any dispute concerning the existence of any default under this Plan; and (h) to enforce all discharge and injunction provisions of the

Plan. This Plan may be modified pursuant to Section 1127 of the Bankruptcy Code to the extent permitted by applicable law.

8.13    Property of the Estate. The Debtor shall retain any and all property not transferred to specific creditors pursuant to this Plan, including proceeds of property, free and clear of any liens, claims and encumbrances, except for those liens, claims and encumbrances whose continuation is expressly provided for in this Plan.

8.14    Authorizations. The entry of an Order confirming this Plan shall constitute authority for the Debtor to take or cause to be taken any and all actions necessary or appropriate to consummate the provisions of this Plan, including executing documents necessary or desirable to effectuate the provisions of this Plan.

8.15    Dates. If any date or deadline provided for in this Plan falls on a Saturday, Sunday, federal holiday, or day recognized as a holiday by the government of the State of Georgia (a "Holiday"), then the actions or event required by such date shall be automatically extended to the next day that is not a Holiday.

8.16    "Plan" definition. As used herein, "Plan" refers to this plan and includes any amendments or modifications made from time to time, and includes any and all exhibits and reports submitted in support hereof or referenced herein.

8.17    Revocation or Modification of Proposed Plan. Debtor reserves the right to revoke, withdraw or modify this Plan prior to the confirmation hearing.

8.18    Plan Controls Contrary Documents. In the event that any provision of this Plan conflicts with, or might be read to create an ambiguity with, the Disclosure Statement then the terms of this Plan shall control. Any contrary or modifying terms in the Order confirming this Plan shall control over terms of this Plan.

ARTICLE IX
DEFAULT; REMEDIES

9.1    Event of Default Defined. An "Event of Default" means any failure on the part of Debtor to pay fully when due any payment required to be made in accordance with the provisions of the Plan, or failure to perform or violation of any other obligation under the Plan, that remains uncured for a period of fifteen (15) business days after written notice of such failure of payment or performance or violation from an affected creditor has been received by the Debtor and the undersigned Debtor's counsel.

9.2    Default cure provisions. Upon and after any Event of Default, Debtor is authorized, but not in any way required, to:

(a) obtain a loan or a capital contribution and may enter into documents embodying the terms of the loan or capital contribution, including a loan or capital contribution from insiders of the Debtor, without further hearing or approval of the Court

in the event that an Event of Default occurs, provided that:

       (i) the loan or capital contribution will be used to cure fully the default regardless of how the loan proceeds or capital contribution beyond the default amount are used;

       (ii) any loan may accrue interest not in excess of the prime rate stated in the Wall Street Journal on the date of execution of a promissory note from the Debtor to the lender plus three percent (3%); and

       (iii) if funds are advanced to the Debtor in the form of a loan rather than a capital contribution, the lender will be entitled to administrative expense priority for amounts actually advanced to the Debtor but not entitled to a security interest in any property of the Debtor without seeking and obtaining separate Court approval after notice to all creditors and other parties in interest; or

    (b) sell the property of the Debtor at auction, free and clear of any and all liens, to the party making the highest or best offer, without further hearing or approval of the Court, and sign such bills of sale, assignments, or other documents of sale as Debtor deems desirable, so long as the sale either results in sales proceeds sufficient to pay all allowed non-insider claims in full, or creditors holding allowed non-insider claims agree in writing to accept less than full payment, after sending notice to all creditors and parties in interest, and such other potential bidders as the Debtor deems desirable, of (i) the auction date, (ii) the auction location, (iii) bidding procedures, which may include minimum bidding increments, (iv) any requirements for a deposit, letter of credit, verified financial statement, or other demonstration of ability to close the purchase, (v) any other auction participation requirements, (vi) requirements for closing after being the successful bidder, which may include a deadline for payment, (vii) whether the auction is with our without reserve, and (viii) any re-auction or re-bidding procedures in the event that the winning bidder at the auction fails to close, make payment, or perform other terms of the accepted offer; or

    (c) seek Court approval to modify this Plan.

9.3    <u>Remedies upon Default</u>. All creditors shall have all the rights and remedies provided by law upon the occurrence of an Event of Default, including any rights to seek (a) appointment of a trustee, (b) modification of the plan, (c) conversion of the case to a case under Chapter 7 of the Bankruptcy Code, and/or (d) any other rights permitted by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable non-bankruptcy law, all without prejudice to Debtor's right to seek to modify the plan and/or otherwise oppose such requests for relief.

ARTICLE X
DISCHARGE; PERMANENT INJUNCTION

10.1    <u>Permanent Injunction</u>. The entry of an Order discharging the debtor pursuant to 11

U.S.C. § 1129(d)(5) shall operate as an injunction against any act against the Debtor or its property to initiate, prosecute, enforce, liquidate, collect or otherwise assert any claim or interest against the Debtor and its property except as provided in this Plan.

Dated: October 28, 2013.

**CUMMINGS & KELLEY P.C..**

By:    */s/ Charles N. Kelley, Jr.*
Charles N. Kelley, Jr.
Georgia State Bar No. 412212
Attorneys for Debtor

P.O. Box 2758
Gainesville, Georgia 30503
(770) 531-0007