## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| **LEON DOUGLAS HUMPHRIES**, | ) | Case No. 13-58138-CRM |
| | ) | |
| Debtor. | ) | Judge Mullins |
| | ) | |


### DEBTOR'S AMENDED PLAN OF REORGANIZATION

Filed by:

Leon Douglas Humphries, Debtor and Debtor in Possession


Attorneys for Debtor and Debtor in Possession:

Charles N. Kelley, Jr.
Kelley & Clements LLP
PO Box 2758
Gainesville, Georgia 30503-2758
(770) 531-0007
ckelley@kelleyclements.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 5

I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME AND GOVERNING LAW .......................................................................... 6

    A.   RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING
LAW ........................................................................................................... 6

    B.   DEFINED TERMS ........................................................................................ 7

II. ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES ........................... 19

    A.   INTRODUCTION ....................................................................................... 19

    B.   ADMINISTRATIVE CLAIMS ...................................................................... 19

    C.   PROFESSIONAL FEE CLAIMS .................................................................. 21

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
EQUITY INTERESTS ........................................................................................ 22

    A.   SUMMARY ............................................................................................... 22

    B.   CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST THE DEBTOR ... 23

            1.   Class 1—Secured Claims .................................................... 23

            2.   Class 2—Priority Tax Claims.............................................. 24

            3.   Class 3—Unsecured Claims ................................................ 24

            4.   Class 4—Convenience Class ............................................... 25

IV. ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 26

    A.   VOTING CLASSES .................................................................................. 26

    B.   ACCEPTANCE BY IMPAIRED CLASSES .................................................... 26

    C.   PRESUMED ACCEPTANCE/REJECTION OF PLAN ..................................... 26

    D.   NONCONSENSUAL CONFIRMATION......................................................... 26

    E.   HOW TO VOTE ...................................................................................... 27

V. MEANS FOR IMPLEMENTATION OF THE PLAN........................................ 28

    A.   CONTINUED EMPLOYMENT AND RETIREMENT INCOME ........................... 28

    B.   FULL AND FINAL SATISFACTION............................................................ 28

2

C.  DISTRIBUTION PROCEDURES ........................................................ 29

D.  RESOLUTION OF DISPUTED CLAIMS ............................................ 29

E.  ALLOCATION OF DISTRIBUTIONS ................................................ 30

F.  SETOFFS ........................................................................................ 30

G.  NO DISTRIBUTIONS ON LATE-FILED CLAIMS ............................ 30

H.  WITHHOLDING TAXES .................................................................. 31

I.  UNITED STATES TRUSTEE FEES .................................................. 31

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
................................................................................................................ 32

A.  REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 32

B.  CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR
UNEXPIRED LEASES ...................................................................... 33

VII. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND
TO THE EFFECTIVE DATE ................................................................ 33

A.  CONDITIONS TO CONFIRMATION OF THE PLAN ........................... 33

B.  CONDITIONS TO EFFECTIVE DATE .............................................. 34

C.  EFFECT OF FAILURE OF CONDITIONS TO CONFIRMATION THE EFFECTIVE
DATE .............................................................................................. 34

D.  EFFECTIVE DATE .......................................................................... 34

VIII. EFFECTS OF CONFIRMATION .................................................... 34

A.  BINDING EFFECT OF PLAN .......................................................... 34

B.  VESTING OF PROPERTY OF DEBTOR ............................................ 35

C.  LIMITATION OF LIABILITY ........................................................... 35

D.  INJUNCTION .................................................................................. 36

IX. RETENTION OF JURISDICTION ................................................... 38

X. MISCELLANEOUS .......................................................................... 39

A.  WITHDRAWAL OF PLAN OF REORGANIZATION ........................... 39

B.  SEVERABILITY OF PLAN PROVISIONS .......................................... 40

C.  GOVERNING LAW .......................................................................... 40

F.  RESERVATION OF RIGHTS ............................................................ 41

**G.**   COMPUTATION OF TIME PERIODS ....................................................... 41

**H.**   DEFECTS, OMISSIONS AND AMENDMENTS ..................................... 42

**I.**   SUCCESSORS AND ASSIGNS ............................................................... 42

**J.**   IMPLEMENTATION ............................................................................... 43

**K.**   WAIVER OF FOURTEEN (14) DAY STAY ........................................ 43

**L.**   SUBSTANTIAL CONSUMMATION ................................................... 43

## PRELIMINARY STATEMENT

Pursuant to Chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330, Leon Douglas Humphries, debtor and debtor-in-possession in the above-captioned Chapter 11 Case (the "Debtor"), hereby respectfully proposes the following Plan of Reorganization. Reference is made to the Disclosure Statement accompanying the Plan, for a discussion of the Debtor's history, business, results of operations and properties, the post-petition liquidation of substantially all of the Debtor's assets and for a summary and analysis of the Plan. All Holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtor. With the Plan, Creditors will receive a Ballot for voting on the Plan, and a Disclosure Statement that provides information concerning the Debtor and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the requisite number of

Creditors must approve the Plan and the Bankruptcy Court must find that the Plan meets

the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the

Bankruptcy Court may order the case dismissed, or converted to a liquidating case under

Chapter 7 of the Bankruptcy Code, or the Debtor or other parties in interest may propose

a different Plan.

## I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

**A.    Rules of Interpretation, Computation of Time and Governing Law**

1. For purposes of the Plan: (a) whenever from the context it is appropriate, each

term, whether stated in the singular or the plural, will include both the singular and the

plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, will

include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a

contract, instrument, release, indenture or other agreement or document being in a

particular form or on particular terms and conditions means that such document will be

substantially in such form or substantially on such terms and conditions; (c) any reference

in the Plan to an existing document or exhibit Filed, or to be Filed, will mean such

document or exhibit, as it may have been or may be amended, modified or supplemented;

(d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits

are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein,"

"hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety

rather than to a particular portion of the Plan; (f) references to part includes the whole, except where the context clearly requires otherwise; (g) "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

3. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of Georgia, without giving effect to the principles of conflict of laws thereof.

**B.    Defined Terms**

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form in the Plan:

7

"Administrative Claim" means a Claim for costs and expenses of administration under Section 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"Administrative Claims Bar Date" means the last date set by the Bankruptcy Court pursuant to an Administrative Claims Bar Date Order for a Claimant to file a request for payment of any Administrative Claim that arose between the Petition Date, and the Effective Date.

"Administrative Claims Bar Date Order" means the order or orders setting any Administrative Claims Bar Date, which order could be the Confirmation Order.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which Debtor or other party in interest has not Filed an objection on or before the 180th day after the Effective Date; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been Filed; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Debtor on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Claim or Priority Tax Claim executed by the Debtor; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed by the Claimant before the applicable Rejection Bar Date for such claim or has otherwise been deemed timely Filed under applicable law; or (f) a Claim that is Allowed pursuant to the terms of this Plan.

"Allowed Claim" means a Claim that has been Allowed.

"Ballots" mean the ballots upon which Holders of Impaired Claims will indicate their acceptance or rejection of the Plan in accordance with the Plan.

9

"Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in sections 101 et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States District Court for the Northern District of Georgia having jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to Section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the General, and Local Rules of the Bankruptcy Court.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

"Chapter 11 Case" means the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled *In re Leon Douglas Humphries*, Case No. 13-58138-CRM, currently pending before the Bankruptcy Court.

"Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against Debtor, including, but not limited to: (a) any right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claimant" means the Holder of a Claim.

"Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 of the Plan.

"Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, which will be in form and substance acceptable to the Debtor.

"Consummation" or "Consummate" means the occurrence of or to achieve the Effective Date.

"Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

"Creditor" means any Holder of a Claim against Debtor that arose on or prior to the Petition Date.

"Debt" means liability on a Claim.

"Debtor" means Leon Douglas Humphries

"Debtor in Possession" means Leon Douglas Humphries, as debtor in possession in this Chapter 11 Case pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

"Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed

12

timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

"Disclosure Statement" means Debtor's Disclosure Statement dated _____ _____, as amended, supplemented, or modified from time to time, describing the Plan, that was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

"Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

"Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after the applicable Bar Date for such Claim; (iii) any Contingent Claim or Unliquidated

13

Claim; (iv) any Claim scheduled by the Debtor in the Schedules as disputed, contingent

or unliquidated; (v) a Proof of Claim filed in a greater amount, or of a different nature or

priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (vi)

a Claim that is not listed in the Schedules. To the extent an objection relates to the

allowance of only a part of a Claim, such Claim will be a Disputed Claim only to the

extent of the objection and will be deemed Allowed as to the portion for which no

objection is made.

"Effective Date" means the first Business Day of the month after the Confirmation

Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions

specified in Article 7 of the Plan have been satisfied, unless waived by the Debtor in

writing.

"Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

"Equity Interest" means any equity interest in Debtor, including, but not limited

to, all issued, unissued, authorized or outstanding shares or stock, together with any

warrants, options or contract rights to purchase or acquire such interests at any time.

"Estate" means the estate of the Debtor in this Chapter 11 Case created pursuant to

Section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

"File" or "Filed" means file or filed with the Bankruptcy Court.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

14

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"General Bar Date" means September 18, 2013, the date set by the Bankruptcy Court as the last day for filing a Claim arising prior to the Petition Date against the Debtor in this Chapter 11 Case.

"General Unsecured Claims" means all Claims that are not Administrative Claims, Priority Claims, Priority Tax Claims, or Secured Claims.

"Governmental Unit" means the United States and any state, commonwealth, district, territory, municipality, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), or any foreign state.

"Holder" means an Entity holding a Claim or Equity Interest.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

15

"Insider" means an insider of any Debtor, as defined in Section 101(31) of the
Bankruptcy Code.

"Lien" means any charge against or interest in property (including, but not limited
to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security
device of any kind) to secure payment of a debt or performance of an obligation.

"Debtor" means Leon Douglas Humphries.

"Objection Deadline" means _____, at 4:00 p.m., the date
established by the Bankruptcy Court for the filing of any objection to the Plan.

"Petition Date" means April 12, 2013, the date on which Debtor filed its petition
for relief commencing this Chapter 11 Case.

"Plan" means this Plan of Reorganization, either in its present form or as it may be
altered, amended, modified or supplemented from time to time in accordance with the
Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any
exhibits and schedules hereto, either in its present form or as the same may be amended,
modified or supplemented from time to time in accordance with the terms and provisions
hereof.

"Plan Objection Deadline" means the deadline established by the Bankruptcy
Court for filing and serving objections to Confirmation of the Plan.

"Prime Rate" means the prime rate of interest as most recently published by the
Federal Reserve Board in Statistical Release H-15.

16

"Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

"Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim Filed pursuant to Section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

"Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented

from time to time, and Debtor's statement of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax. "Tax" will include any interest or additions attributable to, imposed on or with respect to such assessments.

"Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

"Unliquidated Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not

18

been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

"Unsecured Claim" means any Claim against the Debtor or its Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Priority Claim.

"U. S. Trustee" means the Office of the United States Trustee for Region 3.

## II. ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES

### A.    Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following Claims in a Class:

### B.    Administrative Claims

Each Holder of an Allowed Administrative Claim will receive, from Estate Assets, without interest, Cash equal to the Allowed amount of such Claim, unless such Holder will have agreed to different treatment of such Claim, at the sole option of the Debtor: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holders of such Claims and the Debtor; (c) with respect to any Administrative Claims representing

obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), until the entry of a final decree or an order converting or dismissing the case.

Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code that have not filed such requests by the applicable deadlines provided for herein will be forever barred from asserting such claims against the Debtor, its Estate, its successors or assigns, or its property. Any objection to Professional Fee Claims will be filed on or before the objection deadline specified in the Plan or order of the Bankruptcy Court.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be Filed and not Filed by the Administrative Claim Bar Date will be deemed disallowed and discharged. Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, will be paid on or before the Effective Date.

C.    **Professional Fee Claims**

The Debtor will pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed or served after the Effective Date, plus post-Effective Date fees approved by the Debtor.

The Bankruptcy Court must rule on and allow all Professional Fee Claims before the fees will be owed and paid. For all Professional Fee Claims, except Bankruptcy Clerk's Office fees, the fees and expenses of the Claims Agent, and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The Debtor may retain and compensate professionals for services rendered following the Effective Date without order of the Bankruptcy Court. Such post-Effective Date professionals will provide the Debtor with periodic, detailed invoices in respect of their services and expenses, which may be paid by the Debtor without Bankruptcy Court approval. Notwithstanding the foregoing, if the Debtor objects in writing to the payment of any compensation, such disputed amount will not be paid prior to the earlier of the resolution of such dispute or a ruling by the Bankruptcy Court.

21

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must File and serve an application for final allowance of compensation and reimbursement of expenses no later than seventy-five (75) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

## III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.    Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest will be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.** **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtor pursuant to

the Plan, is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1—Secured Claims | Impaired | Entitled to Vote |
| Class 2—Priority Tax Claims | Impaired | Entitled to Vote |
| Class 3—General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4—Convenience Class | Impaired | Entitled to Vote |

**1.** **Class 1—Secured Claims**

**a.** **Classification:**

Class 1 consists of any claims secured by real or personal property of Debtor.

Upon information and belief the Debtor states that the only Secured Claim is the Claim of

Community & Southern Bank.

**b.** **Treatment:**

The Debtor will surrender to the Class 1 Claimants all property securing their

claim upon the later.pay from the proceeds from the sale of the Real Property the

Allowed amount of each Class 1 Secured Claim to each Entity holding a Class 1 Secured

Claim as soon as practicable following the later of (a) the Effective Date or (b) the date

such Class 1 Secured Claim becomes an Allowed Claim (or as otherwise permitted by

law).

### c.   Voting:

Class 1 is an Impaired Class and Holders of Class 1 Claims are entitled to vote on the Plan.

### 2.    Class 2—Priority Tax Claims

### a.   Classification

Class 2 consists of the Priority Tax Claims against the Debtor. The only priority tax claims are real property ad valorem taxes due to Gwinnett County and the City of Buford, all of which were paid by the secured creditor that held a lien on the property. Debtor does not believe any Class 2 Claims remain unpaid.

### b.   Treatment

The Debtor will pay any Class 2 Claims remaining in cash on the Effective Date of the Plan.

### d.   Voting.

Class 2 is an Impaired Class and Holders of Class 2 Claims are entitled to vote on the Plan.

### 3.    Class 3—Unsecured Claims

### a.   Classification

Class 3 consists of the Claims of Holders of General Unsecured Claims that are not included in the Class 4 Convenience Class.

### b.   Treatment

Each Holder of Class 3 Claims will receive their *pro rata* share of a pool of $80,000, payable over a term of eight years commencing on the first day of the month following the Effective Date, with interest payable at the Prime Rate.

### c.   Voting:

Class 3 is an Impaired Class and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### 4.      Class 4—Convenience Class

### a.   Classification

Class 4 consists of all General Unsecured Claims of $2,500 or less or that agree to reduce their claim to that amount.

### b.   Treatment

Class 4 Claims will be paid fifty percent (50%) of their claims in cash upon the Effective Date of the Plan.

### c.   Voting

Class 4 is an Impaired Class and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

## IV. ACCEPTANCE OR REJECTION OF THE PLAN

**A.    Voting Classes**

Each Holder of an Allowed Claim in Classes 1, 2, 3, and 4 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims will be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.    Acceptance by Impaired Classes**

An Impaired Class of Claims will have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**C.    Presumed Acceptance/Rejection of Plan**

All classes are Impaired and no class is presumed to have accepted the Plan.

**D.    Nonconsensual Confirmation**

If any Class rejects the Plan the Debtor will request the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, if any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code the Plan may be amended.

**E.** **How to Vote**

A form of Ballot is being provided to Creditors in Classes 1, 2, 3, and 4 by which Creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan—you can vote for or against the Plan. To vote on the Plan, please complete the Ballot, as indicated thereon, (1) by indicating on the enclosed ballot that (a) you accept the Plan or (b) reject the Plan and (2) by signing your name and returning the Ballot to the **Clerk, U.S. Bankruptcy Court, Room 1340, 75 Ted Turner Drive SW, Atlanta, GA, 30303**.

---

**In order to be counted, ballots must be completed, signed and received no later than 4:00 p.m. Eastern Time on** _____ **at the following address:**

**Clerk, U.S. Bankruptcy Court**
**Room 1340**
**75 Ted Turner Drive SW**
**Atlanta, GA 30303**

**Parties that are registered electronic filers with the united states district court for the Northern District of Georgia may file ballots electronically.**

**Do not send your ballot via facsimile or e-mail. Ballots received by facsimile or e-mail will not be counted.**

---

> **If your ballot is not properly completed, signed and received as described, it will not be counted.**

If your ballot is damaged or lost, you may request a replacement by calling or writing Kelley & Clements LLP, Attn: Tammy A. Winkler, PO Box 2758, Gainesville, Georgia 30503-2758, (770) 531-0007, twinkler@kelleyclements.com

## V. MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Continued Employment and Retirement Income

The Debtor will fund the payments to be made under the Plan by his continued employment or by retirement income if he ceases work.

### B. Full and Final Satisfaction

Commencing upon the Effective Date, the Debtor will be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtor will be deemed fixed and adjusted pursuant to the Plan and the Debtor will have no liability on account of any Claims or Interests except as set forth in the Plan. All payments and all distributions made by the Debtor under the Plan will be in full and final satisfaction, settlement and release of all Claims against the Debtor.

**C.      Distribution Procedures**

Except as otherwise agreed by the Holder of a particular Claim, or as provided in

the Plan, all amounts to be paid by the Debtor under the Plan will be distributed in such

amounts and at such times as is reasonably prudent. Except as otherwise provided in the

Plan the Debtor will make payments to the Holders of Allowed Claims: (a) in U.S.

dollars by check drawn on a domestic bank selected by the Debtor in its sole discretion,

or by wire transfer from a domestic bank, at the Debtor's option, and (b) by first-class

mail (or by other equivalent or superior means as determined by the Debtor).

**D.      Resolution of Disputed Claims**

All objections to Claims will be filed and served not later than 180 days following

the Effective Date; provided, however, such date may be extended by the Bankruptcy

Court beyond 180 days upon motion (the "Extension Motion") filed by the Debtor prior

to the deadline established in the Plan. If an objection is not timely filed or if no

Extension Motion is pending by such deadline, any remaining Disputed Claims will be

deemed to be Allowed Claims for purposes of the Plan. Unless otherwise provided in the

Confirmation Order, the Debtor is authorized to settle, or withdraw any objections to, any

Disputed Claim following the Effective Date without further notice to Creditors or

authorization of the Bankruptcy Court, in which event such Claim will be deemed to be

an Allowed Claim in the amount compromised for purposes of the Plan. Under no

circumstances will any distributions be made on account of Disallowed Claims.

### E.    Allocation of Distributions

Distributions to any Holder of an Allowed Claim will be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, next, to the extent the distribution exceeds such amount, to interest, if any, and finally, to the extent the distribution exceeds the principal and interest, to attorney's fees and expenses. Allocation and distribution of funds for interest or attorney's fees and expenses will be solely to the extent that such charges are an allowable portion of the Allowed Claim.

### F.    Setoffs

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any right of setoff or recoupment the Debtor may have against any Creditor.

### G.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable Bar Date will be a Disallowed Claim, and the Debtor will not make any distribution to a Holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Debtor will treat such Claim as an Allowed Claim in the amount in which it was so listed.

**H.**      **Withholding Taxes**

Pursuant to section 346(h) of the Bankruptcy Code, the Debtor will be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Debtor will comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such Withholding Taxes. As a condition to making any distribution under the Plan, the Debtor, if on the Effective Date, or the Debtor, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtor, if on the Effective Date, and the Debtor, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

**I.**      **United States Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid will be paid by the Debtor on or before the Effective Date. Thereafter, the Debtor will pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees will be paid until entry of a final decree or an order converting or dismissing the case.

## VI. TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

**A.    Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that: (i) were
previously assumed or rejected by order of the Bankruptcy Court, and (ii) are the subject
of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code,
on the Effective Date, each executory contract and unexpired lease entered into by Debtor
prior to the Petition Date that has not previously expired or terminated pursuant to its
own terms will be deemed rejected pursuant to Section 365 of the Bankruptcy Code;
provided, however, that nothing in this Section A will cause the rejection, breach or
termination of any contract of insurance benefitting the Debtor and its Estate. Further, the
Plan will be deemed a motion to assume such insurance contracts. Nothing in this Article
IX will be construed as an acknowledgement that a particular contract or agreement is
executory or is properly characterized as a lease. The Confirmation Order will constitute
an Order of the Bankruptcy Court approving such rejections pursuant to Section 365 of
the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected
personal property leases will be responsible for taking all steps necessary to retrieve the
personal property that is the subject of such executory contracts and leases and the Debtor
will bear no liability for costs associated with such matters.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of

executory contracts or unexpired leases pursuant to Confirmation of the Plan, if

any, must be Filed with the Bankruptcy Court within thirty (30) days after the

earlier of the Effective Date or an order of the Bankruptcy Court approving such

rejection. Any Claims arising from the rejection of an executory contract or

unexpired lease pursuant to Confirmation of the Plan that is not Filed within such

times will be forever barred from assertion against the Debtor and its property. All

such Claims for which proofs of claim are timely and properly Filed and ultimately

Allowed will be treated as Unsecured Claims subject to the provisions of the Plan.

**VII. CONDITIONS PRECEDENT TO
CONFIRMATION OF THE PLAN AND TO THE
EFFECTIVE DATE**

**A.**     **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the

following conditions precedent, any one or more of which may be waived by the Debtor

in writing: (i) the Bankruptcy Court will have approved a Disclosure Statement to this

Plan in form and substance acceptable to the Debtor in its sole discretion; (ii) the Court

will have signed the Confirmation Order and entered it on the docket of the Bankruptcy

Case, which Confirmation Order will be in form and substance acceptable to the Debtor

and may not be amended, modified, supplemented, or clarified without the prior consent

33

of the Debtor; and (iii) the Confirmation Order will not be subject to any stay of effectiveness.

### B.    Conditions to Effective Date

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more may be waived by the Debtor in writing: (i) the Confirmation Order will have become a Final Order which is unstayed; (ii) the Confirmation Date will have occurred; and (iii) no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code will have been made, or if made, will remain pending.

### C.    Effect of Failure of Conditions to Confirmation the Effective Date

If any one or more of the conditions in Section 7(A) is not met, the Debtor may withdraw this Plan and, if withdrawn, this Plan will be of no further force or effect.

### D.    Effective Date

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan will become effective on the Effective Date.

## VIII. EFFECTS OF CONFIRMATION

### A.    Binding Effect of Plan

The provisions of the confirmed Plan will bind the Debtor, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor

34

or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Case, whether

or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under

the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the

Plan. All Claims and Debts will be as fixed and adjusted pursuant to the Plan. The Plan

will also bind any taxing authority, recorder of deeds, or similar official for any county,

state, or governmental unit or parish in which any instrument related to under the Plan or

related to any transaction contemplated under the Plan is to be recorded with respect to

any taxes of the kind specified in Bankruptcy Code section 1146(a).

### B.    Vesting of Property of Debtor

Upon the Effective Date, title to all property of the Estate of the Debtor in the

Chapter 11 Case will vest in the Debtor and will be retained by the Debtor for the

purposes contemplated under the Plan, subject to any security interests upon such

property.

### C.    Limitation of Liability

The Debtor, and his employees, agents, advisors, accountants, attorneys and

representatives (collectively, the "Exculpated Parties"), will neither have nor incur any

liability to any entity for any action in good faith taken or omitted to be taken after the

Petition Date in connection with or related to the Chapter 11 Case or the formulation,

preparation, dissemination, implementation, Confirmation or consummation of the Plan,

the Disclosure Statement, or any agreement created or entered into in connection with the

35

Plan; provided, however, that this limitation will not affect or modify the obligations

created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its

rights under the Plan and will not release any action (or inaction) constituting willful

misconduct, fraud or gross negligence (in each case subject to determination of such by

final order of a court of competent jurisdiction); provided that any Exculpated Party will

be entitled to reasonably rely upon the advice of counsel with respect to its duties and

responsibilities (if any) under the Plan and such reasonable reliance will form an absolute

defense to any such claim, cause of action, or liability. Without limiting the generality of

the foregoing, each Exculpated Party will be entitled to and granted the protections of

section 1125(e) of the Bankruptcy Code. No provision of the Plan or the Disclosure

Statement will be deemed to act to or release any claims or liabilities that the Debtor or

its Estate may have against any Entity or person for any act, omission, or failure to act

that occurred prior to the Petition Date, nor will any provision of the Plan be deemed to

act to release any claims.

**D.    Injunction**

    In implementation of the Plan, except as otherwise expressly provided in the

Confirmation Order or the Plan, and except in connection with the enforcement of the

terms of the Plan or any documents provided for or contemplated in the Plan, all entities

who have held, hold or may hold Claims against or Interests in the Debtor or the Estate

that arose prior to the Effective Date are permanently enjoined from: (a) commencing or

continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, or any property of the Debtor or the Estate with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, or any property of the Debtor or the Estate with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, , or any property of the Debtor or the Estate with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the Estate, or any property of the Debtor or the Estate, with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section will prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor under the Plan.

## IX. RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

i. To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

ii. To administer the Plan;

iii. To liquidate any Disputed Claims;

iv. To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

v. To hear and determine any and all applications by Professionals for an award of Professional Fees;

vi. To enable the Debtor to commence and prosecute any Litigation which may be brought after the Effective Date;

vii. To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document or instrument contemplated by the Plan;

viii. To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

ix. To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

x. To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

xi. To close the Chapter 11 Case.

## X. MISCELLANEOUS

**A.     Withdrawal of Plan of Reorganization**

The Debtor reserves the right to withdraw the Plan at any time on or before the Confirmation Date. If the Debtor withdraws the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan will be deemed null and void and, in such event, nothing contained herein will be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any

39

manner the rights of the Debtor or any entity in any further proceedings involving the

Debtor.

**B.    Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of the Plan

is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy

Court will, with the consent of the Debtor, have the power to alter and interpret such term

or provision to make it valid or enforceable to the maximum extent practicable, consistent

with the original purpose of the term or provision held to be invalid, void or

unenforceable, and such term or provision will then be applicable as altered or

interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder

of the terms and provisions hereof will remain in full force and effect and will in no way

be affected, impaired or invalidated by such holding, alteration, or interpretation. The

Confirmation Order will constitute a judicial determination and will provide that each

term and provision hereof, as it may have been altered or interpreted in accordance with

the foregoing, is valid and enforceable pursuant to its terms.

**C.    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable,

the rights, duties and obligations arising under the Plan will be governed by, and

construed and enforced in accordance with, the laws of the State of Georgia.

**F.      Reservation of Rights**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, will (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

**G.      Computation of Time Periods**

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run will not be included. The last day of the period so computed will be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**H.    Defects, Omissions and Amendments**

The Debtor may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Debtor has complied with Bankruptcy Code section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

**I.    Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

42

**J.      Implementation**

Upon Confirmation, the Debtor will be authorized to take all steps and execute all

documents necessary to effectuate the provisions contained in the Plan.

**K.      Waiver of Fourteen (14) Day Stay**

Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy

Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent

applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

**L.      Substantial Consummation**

On the Effective Date, the Plan will be deemed substantially consummated under

Bankruptcy Code sections 1101 and 1127(b).

Dated:  December 1, 2015

KELLEY & CLEMENTS LLP


By:      /s/
Charles N. Kelley, Jr.
Georgia State Bar No. 412212

Attorneys for Debtor

PO Box 2758
Gainesville, Georgia 30503
(770) 531-0007
ckelley@kelleyclements.com